RECEIVED

**NOT FOR PUBLICATION**

APR 2 9 2013

AT 8:30_____M
WILLIAM T. WALSH CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN VINCENT JOY, : | |
| Plaintiff, : | |
| v. : | Civil Action No. 12-4497 (MAS) (LHG) |
| EQUIFAX INC., *et al.*, : | **MEMORANDUM OPINION** |
| Defendants. : | |

**SHIPP, District Judge**

    This matter comes before the Court upon Equifax, Inc.'s ("Defendant" or "Equifax") Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def.'s Br., ECF No. 10-1.) Plaintiff Brian Vincent Joy ("Plaintiff" or "Joy") filed Opposition. (Pl.'s Opp'n, ECF No. 18.) Defendant filed a Reply Brief. (Def.'s Reply, ECF No. 19.) The Court carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Rule 78. For the reasons set forth below, and other good cause shown, Defendant's Motion to Dismiss is DENIED.

**I.    Background**

    Plaintiff alleges claims of discrimination based on disability and perceived disability, (Am. Compl., ECF No. 9), against Defendant, his former employer, Kimberly P. Farley ("Farley"), his immediate supervisor, Thomas F. Madison, Jr. ("Madison"), Farley's Supervisor, and John Does 1-10 (collectively, "Defendants"), (Am. Compl. ¶¶ 2-8). Farley, Madison and John Does 1-10 are officers of Equifax. (Am. Compl. ¶ 8.) Defendant removed this matter from the Superior Court of New Jersey, Middlesex County. (Am. Compl. ¶ 9.) Jurisdiction before the

Court is proper pursuant to 28 U.S.C. § 1332 as the Parties are completely diverse and the requisite amount in controversy is met. Following removal, Defendant filed a Motion to Dismiss and Plaintiff filed an Amended Complaint. Defendant now seeks to dismiss the Amended Complaint.

Plaintiff alleges that on or about December 17, 2011, he was informed by Farley that his position was to be eliminated in early 2012. (Am. Compl. ¶ 12.) On the same day, Plaintiff contacted Farley's supervisor, Madison, who allegedly informed Plaintiff that Farley's statement was not true and that if it were true, Plaintiff would be placed in a different role at Equifax. (Am. Compl. ¶ 14.)

Anticipating an elimination of his position, Plaintiff identified a position with Equifax in the Financial Services Group ("FSG") and interviewed for the position in late January through early February 2012. (Am. Compl. ¶¶ 15-17.) Plaintiff alleges that during this time he was informed by the manager of the FSG that he was the "top pick" for the position. (Am. Compl. ¶¶ 17-18.) While interviewing for the FSG position, Plaintiff received an executed Severance Agreement from Farley. (Am. Compl. ¶ 9.) Plaintiff alleges that it is not Equifax's normal practice to send a fully executed copy of such agreement prior to the date employment terminates. (Am. Compl ¶ 20.)

Plaintiff alleges that he suffered from alcoholism during his employment with Equifax. In July 2011, he became inebriated while traveling on Equifax business. (Am. Compl. ¶ 22.) Madison contacted Plaintiff while he was at the airport and became aware of Plaintiff's inebriated condition. (Am. Compl. ¶¶ 22-23.) Madison discussed the situation with Plaintiff and Plaintiff agreed not to engage in the same conduct again. (Am. Compl. ¶ 24.)

According to Plaintiff, he has been treated by medical professionals for alcoholism, and sought in-patient treatment for alcohol addiction in November 2011. (Am. Compl. ¶ 21.) Plaintiff further alleges that he sought out-patient counseling as late as February 2012. (Am. Compl. ¶ 28.)

Plaintiff alleges that his disability did not prevent him from performing the essential functions of his job and that he even received accolades from Equifax. (Am. Compl. ¶ 25.) Plaintiff alleges that he used his Equifax and personal e-mail accounts to communicate with in-patient alcohol treatment centers to secure treatment regarding his alleged disability, ostensibly his alcoholism. (Am. Compl. ¶ 26.) He further alleges that Equifax monitors e-mail communications and, on at least one occasion, Plaintiff was notified that specific e-mails were reviewed. (Am. Compl. ¶ 27.)

Plaintiff alleges that in February 2012, in the presence of other Equifax employees, Madison asked "in passing" whether Plaintiff was on drugs again. (Am. Compl. ¶ 29.)  This, according to Plaintiff, "demonstrat[es] that Defendant Madison is willing to share this information with anyone he encounters." (Am. Compl. ¶ 29.)

On or about March 19, 2012, Plaintiff alleges that he was informed by Dodge McFall ("McFall"), the manager of the FSG that he had concerns about hiring Plaintiff because of conversations he had with Madison and Farley. (Am. Compl. ¶ 30.) Plaintiff alleges that Farley recommended McFall not hire Plaintiff. (Am. Compl. ¶ 30.) On March 20, 2012, Plaintiff alleges that McFall informed him that another candidate would be assuming the FSG role and alleges Farley's comments were a contributing factor. (Am. Compl. ¶ 31.) In April 2012, Suzanne Alford ("Alford") an Equifax employee, attributed Plaintiff not being selected for the FSG role to Plaintiff not having a background in retail banking products. (Am. Compl. ¶ 32.)  Plaintiff

alleges that he has experience with retail banking products and the skills necessary to perform the FSG role. (Am. Compl. ¶ 33.) Plaintiff further asserts that Farley and Madison sought to ensure that he did not remain employed by Equifax because of his disability or a perception of his disability. (Am. Compl. ¶ 34.)

Plaintiff alleges that on March 20, 2012, he contacted Steve Meirink ("Meirink") regarding a different open position at Equifax. (Am. Compl. ¶ 35.) Plaintiff was informed that Meirink's superior, Craig Crabtree ("Crabtree"), told Meirink that Plaintiff could not be hired because Crabtree was instructed by Madison and Farley not to offer Plaintiff alternative employment with Equifax. (Am. Compl. ¶ 35.)

Plaintiff spoke with Michael Kuentz ("Kuentz"), another hiring manager at Equifax, who initially expressed interest in hiring Plaintiff, but ultimately "passed" on offering Plaintiff employment. (Am. Compl. ¶ 36.) Plaintiff alleges that Kuentz and Farley frequently interact. (Am. Compl. ¶ 36.) Plaintiff alleges that he was terminated because of discrimination and the perception of disability. (Am. Compl. ¶ 37.)

Plaintiff subsequently withdrew his retaliation and defamation claims which are now moot. (Pl.'s Opp'n 8.) Thus, the only issue before the Court is whether Plaintiff has sufficiently pled a claim for disability discrimination pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49, to survive Defendant's Rule 12(b)(6) motion.

## II.   Analysis

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Fed. R. Civ. P. 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## Plaintiff has pled a *prima facie* NJLAD claim.

Preliminarily, a *prima facie* case of discrimination requires a showing that Plaintiff, "(1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications." *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 596 (1988); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Equifax challenges Plaintiff's Amended Complaint on two grounds. First, Defendant asserts that Plaintiff's Amended Complaint fails to allege a covered disability. (Def.'s Br. 8.) Second, Defendant argues that Plaintiff has failed to adequately allege facts sufficient to show that Defendant was aware of any alleged disability. (Def.'s Br. 8.)

As an initial matter, courts have identified alcoholism as a covered disability under the NJLAD. *See Boshko v. Bently Nevada, LLC*, 07-4624 (JAP), 2009 WL 223417, at *4 n.6 (D.N.J. Jan. 28, 2009) ("As a threshold issue, this Court finds that alcoholism is a recognized disability under the LAD.") Further, Plaintiff argues that he has sufficiently pled disability in the form of alcoholism. (Pl.'s Opp'n 4.) Plaintiff sets forth allegations that "during most of [his] employment with Equifax, he suffered from alcoholism." (Am. Compl ¶ 21.) Accordingly, the Court is not persuaded by Defendant's argument that Plaintiff failed to identify his disability. (Def.'s Reply 1.)

Defendant's argument that Plaintiff has not adequately alleged sufficient facts showing that Defendant was aware of Plaintiff's alleged disability is similarly unavailing. "[D]isabilities are often unknown to the employer, and, because of that, the plaintiff must demonstrate that the defendant employer knew of the disability to state a *prima facie* case of unlawful discharge."

6

*Illingworth v. Nestle U.S.A., Inc.*, 926 F. Supp. 482, 489 (D.N.J. 1996). Here, Plaintiff has alleged that he discussed with Madison his "handicap/disability." (Am. Compl. ¶ 24.) The ultimate decision not to re-employ Plaintiff in another position within Equifax was made by McFall, Meirink, and Kuentz, respectively. (Am. Compl. ¶¶ 30-36.) Plaintiff essentially alleges that when construing the Complaint in the light most favorable to him, it is plausible that Madison, who was allegedly informed of Plaintiff's disability, conveyed this information to Farley, Plaintiff's supervisor, and the hiring managers, McFall, Meirink and Kuentz. The Court agrees.

Plaintiff's factual allegations further include that Plaintiff was perceived by his employer as a top candidate for the FSG position. During the very next month, however, Plaintiff was no longer considered a viable candidate because the hiring manager for the FSG position spoke with Madison and Farley. (Am. Compl. ¶¶ 29-30.) At this stage of the litigation, Defendant does not dispute: (1) Plaintiff's qualifications, (2) that he was not hired for the alternative positions, and (3) that other applicants were sought with experience commensurate with Plaintiff's qualifications. Pursuant to a Rule 12(b)(6) analysis, Plaintiff has sufficiently pled a claim under the NJLAD.

## III.    Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Count I of Defendant's Motion to Dismiss is DENIED. An Order consistent with Opinion will be filed.

*Michael A. Ship*

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:   4/29/13